UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

CAROLYN BYRD,                          )
                                       )
            Plaintiff,                 )
                                       )
                                       )
v.                                     )        3:07-CV-121
                                       )        (VARLAN/GUYTON)
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
            Defendant.                 )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal

Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding

disposition by the District Court of plaintiff's Motion for Summary Judgment and Brief in Support

[Docs. 12 & 13] and defendant's Motion for Summary Judgment & Memorandum in Support [Docs.

16 & 17].   Plaintiff Carolyn Byrd ("plaintiff") seeks judicial review of the decision of the

Administrative Law Judge, the final decision of defendant Commissioner.

On April 11, 2002, plaintiff filed her application for disability insurance benefits (Tr. 25).

She also filed an application for supplemental security income with a protective filing date of March

8, 2002 (Id.).   On both applications, she claims disability as of August 24, 2001 (Id.).   After her

application was denied initially and upon reconsideration, plaintiff requested a hearing.   On

November 18, 2003, a hearing was held before an Administrative Law Judge ("ALJ") to review

determination of plaintiff's claim (Tr. 700-18).   On January 27, 2004, the ALJ found that plaintiff

was not disabled because she remains capable of performing jobs that exist in significant numbers

in the national economy (Tr. 31). On February 24, 2007, the Appeals Council denied plaintiff's request for review (Tr. 6-10), and the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

## I.    ALJ Findings

The ALJ made the following findings:

1.   The claimant did not request reopening of her prior proceedings, nor did she continue to assert disability during the period pertinent to the previous decision.

2.   The claimant met the disability insured status requirements of the Act on August 24, 2001, the date the claimant stated she became unable to work, and continues to meet them through, at least, the date of this decision.

3.   The claimant has not engaged in substantial gainful activity since August 24, 2001.

4.  The medical evidence establishes that the claimant has severe impairments including cervical disc disease, a history of rotator cuff tendonitis, depression and panic disorder, but that she does not have an impairment or combination of impairments listed in, or medically equal to the one listed in Appendix 1, Subpart P, Regulation No. 4.

5.   The claimant's subjective complaints are not credible to the extent alleged.

6.  The claimant has the residual functional capacity to perform work-related activities except for the following limitations: lifting a maximum of twenty pounds occasionally and ten pounds frequently; standing and/or walking about six hours in an eight hour workday; sitting about six hours in an eight hour workday; no overhead reaching with the right arm; only occasional overhead reaching with the left arm and no heavy grasping with the right hand; and

limited but satisfactory ability to: deal with the public; deal with work stresses; maintain attention and concentration; understand, remember, and carry out detailed instruction; and demonstrate reliability (20 C.F.R. 404.1545 and 416.945).

7. The claimant has moderate limitation in the activities of daily living; moderate limitation in social functioning; slight limitation in concentration, persistence, or pace; and no episodes of decompensation. Furthermore, there is nothing in the record supporting a finding that: a minimal increase in mental demands or change in the environment would be predicated to cause the individual to decompensate; or that she has a current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. Thus, her impairments do not meet or equal the "B" or "C" criteria of the mental listings.

8. The claimant is unable to perform her past relevant work.

9. The claimant's residual functional capacity for the full range of light work is reduced by the limitations described in Finding No. 6.

10. The claimant is 43 years old, which is defined as a younger individual (20 C.F.R. 404.1563 and 416.963).

11. The claimant has a high school education (20 C.F.R. 404.1564 and 416.964).

12. The claimant does not have any acquired work skills which are transferrable to the skilled or semiskilled work activities of other work (20 C.F.R. 404.1568 and 416.968).

13. If the claimant had the capacity to perform the full range of light work, section 404.1569 of Regulation No. 4 and section 416.969 of Regulation No. 16 and Rule 202.21 would direct a conclusion

that the claimant is not disabled.

14. Although the claimant's exertional limitations do not allow for her to perform the full range of light work, using the above-cited rule as a framework for decision making, there are a significant number of jobs in the national economy which she could perform. Examples of such jobs were identified and enumerated by a vocational expert and remain unchanged.

15. The claimant was not under a disability as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. 404.1520(f) and 416.920(f)).

(Tr. 31-32).

## II.    Disability Eligibility

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if her physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work. 42 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, she is not disabled.

2. If claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

5. Even if claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.150).

Plaintiffs bear the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden

shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that

there is work available in the national economy that the claimant could perform. Her v. Comm'r of

Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.   Standard of Review

In reviewing the Commissioner's determination of whether an individual is disabled, the

Court is limited to determining whether the ALJ applied the correct legal standards and whether

there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of

Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005).

If the ALJ's findings are supported by substantial evidence based upon the record as a whole,

they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir.

2004); 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Heston v. Comm'r of Soc. Sec.</u>, 245 F.3d 528, 534 (6th Cir. 2001) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)).  It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently.  <u>Crisp v. Sec'y of Health & Human Servs.</u>, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

**IV.**    **Arguments**

Plaintiff argues on appeal that substantial evidence does not support the decision of the ALJ because the ALJ erred in failing to accord proper weight to the opinions of plaintiff's treating physician [Doc. 13].  Plaintiff further argues the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence [<u>Id.</u>].  Specifically, plaintiff argues that the ALJ improperly rejected and ignored the medical opinions of record in making his disability determination [<u>Id.</u>].

The Commissioner contends that substantial evidence supports the ALJ's finding of non-disability [Doc. 17].  As to plaintiff's contention that the ALJ erred in not giving her treating physician's opinion the appropriate weight, the Commissioner argues that the ALJ explained that plaintiff's treating physician's opinion was inconsistent with the objective clinical and diagnostic findings, and thus not entitled to the deference plaintiff contends [<u>Id.</u>].  As to plaintiff's claim that the ALJ's RFC determination is not supported by substantial evidence, the Commissioner contends that the ALJ accommodated all the medical restrictions supported by the record evidence [<u>Id.</u>].

Plaintiff bears the burden of proving her entitlement to benefits.  <u>Boyers v. Sec. of Health & Human Serv.</u>, 46 F.3d 510, 512 (6th Cir. 1994) (citing <u>Halsey v. Richardson</u>, 441 F.2d 1230 (6th

Cir. 1971)).

### A. Failure to Give Appropriate Weight to Treating Physician Opinion

Plaintiff first argues that the ALJ did not give due deference to the medical opinion of her treating physician, Dr. McGaha, who has been treating plaintiff since November 1999 [Doc. 13 at 12]. Plaintiff contends had "proper weight been accorded to the opinions of [her] long-time treating physician, a finding of disability could have been reached." [Id. at 20]. The Commissioner argues the ALJ discounted Dr. McGaha's opinion because it was not supported by the record evidence, *i.e.*, the objective clinical and diagnostic findings, plaintiff's admitted activity level, and Dr. McGaha's longitudinal treatment history [Doc. 17 at 13].

Generally, the "medical opinion of the treating physician is to be given substantial deference, and if that opinion is not contradicted, complete deference must be given." Walker v. Sec'y of Health & Human Serv., 980 F.2d 1066, 1070 (6th Cir. 1992). The reason for such a rule is clear: the treating physician has had a greater opportunity to examine and observe the patient. Id. Further, as a result of his duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. Id. (citing Schisler v. Heckler, 787 F.2d 76, 85 (2d Cir. 1986). However, the ultimate decision of disability rests with the administrative law judge. Id. (citing King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984)).

In regards to Dr. McGaha's diagnosis, the ALJ stated that Dr. McGaha's suggestions of plaintiff's physical limitations seem to "leave her all but bedridden" and her mental limitations "would arguably require inpatient care" (Tr. 29). In light of this finding, the ALJ chose to discount Dr. McGaha's opinion as "inconsistent with the objective clinical and diagnostic findings" and on the grounds that his opinion of plaintiff's limitations was contradicted by other medical evidence

in the record (Id.).

Dr. McGaha reported plaintiff's ability to lift/carry is affected by her impairment (Tr. 413). He reported she cannot lift with her right arm and can only lift a maximum of two pounds occasionally with her left arm (Id.). He further reported plaintiff can stand and/or walk for about three - four hours in an eight hour workday for a maximum of one hour at a time; sit for about three hours in an eight hour workday for a maximum of an half-hour at a time; cannot climb, crawl or overhead reach; can occasionally stoop, kneel, balance or crouch; and should avoid heights, moving machinery, temperature extremes, or vibration (Tr. 413-15). As for mental health limitations, Dr. McGaha reported plaintiff suffers from anxiety and panic attacks, depression with a history of suicidal ideation, social phobia, post-traumatic stress disorder, and is easily intimidated by others (Tr. 422-23). Yet. Dr. McGaha's own notes of examination from July 9, 2003 show plaintiff "is doing much better emotionally ... [and her] [m]ood appears improved since last visit" (Tr. 417). Furthermore, in his "Medical Assessment of Ability to Do Work-Related Activities (Mental)" completed on May 1, 2003, he noted plaintiff's ability to follow work rules was good; her ability to relate to co-workers was fair; and her ability to interact with her supervisors was also fair (Tr. 410).

In conjunction with Dr. McGaha's medical evaluations, the ALJ also considered the evaluations of other doctors who examined plaintiff, examinations which were inconsistent with Dr. McGaha's disability determination. These doctors essentially found normal examination results. For example, plaintiff underwent a shoulder x-ray, completed by Dr. William Hovis, in August 2001 in which it was reported that "the bony architecture is basically normal" ; "[t]he the subacromial space is well preserved" ; "range of motion of the shoulder is noted to be normal" ; and it was "[b]asically [a] normal shoulder x-ray." (Tr. 228-29). Furthermore, plaintiff was examined by Dr.

Summers in June 2002 who noted she had "a mild decrease in range of motion at her cervical spine," but that there were "no other significant findings" and "her condition has remained refractory to conservative, nonsurgical treatment" (Tr. 277). While Dr. Summers also noted "it is reasonable to expect that she will have difficulty twisting/turning her head and elevating her right arm above shoulder level on a repetitive basis ... [s]he should tolerate all other work related activities in this regard." (Id.). Additionally, Dr. Henry directed plaintiff to comply with medication, physical therapy, and psychological recommendations (Tr. 314). Dr. Henry further stated his treatment goals for plaintiff are to "decrease pain, decrease depression, and increase safety of prescriptions" but that "right side bending and rotation were approximately 60% of normal. Left side bending rotation approximately 75% of normal. Upper extremity range of motion was approximately 150 degrees of elevation." (Tr. 313-14). Therefore, the Court finds that the ALJ reasonably did not credit Dr. McGaha's medical opinion, but assigned greater weight to the opinions of other doctors who examined plaintiff upon determining, based on the evidence in the record, Dr. McGaha's "opinion is inconsistent with the objective clinical and diagnostic findings" (Tr. 29). See Cutlip v. Sec'y of Health & Human Serv., 25 F.3d 284, 287 (6th Cir. 1994) (physician opinions must be adequately supported by medical findings and consistent with evidence overall).

As stated above, the ALJ is not bound by the opinions of the treating physician as long as the ALJ sets forth some basis for rejecting the opinions of the treating physician. See Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987) (citing Fife v. Heckler, 767 F.2d 1427, 1437 (9th Cir. 1985) ("If the ALJ wishes to disregard the opinion of the treating physician, he must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record, even where the treating physician's opinion is controverted by the Secretary's consultant)). Here, the ALJ set forth specific, legitimate reasons for disregarding Dr. McGaha's opinion and

adopting the opinions of the other examining physicians (Tr. 29). The ALJ found the opinions and reports of Dr. Summers, Ms. Branton, and Dr. Seidner "generally consistent with and support the conclusion of the Administrative Law Judge in the prior decision" and that "[t]here are no contrary opinions from any of the treating or examining sources other than those previously addressed from Dr. McGaha" (Id.). Thus, this Court finds the ALJ's decision to disregard Dr. McGaha's opinion and adopt the opinions of other examining, but non-treating, physicians is supported by substantial evidence and thus, the ALJ has not committed error.

**B.      RFC Determination**

Plaintiff also argues that the ALJ's RFC determination is not supported by substantial evidence. Specifically, plaintiff argues that the ALJ improperly rejected and ignored the medical opinions of record, and that the RFC determination is flawed by the ALJ's failure to include the previously-noted limitations imposed by plaintiff's treating physician, his failure to consider medical opinions of record, which reflect more severe limitations than those found, and his failure to obtain vocational expert ("VE") testimony at the oral hearing held on November 8, 2003, instead relying on prior VE testimony, which is not part of the record [Doc. 13 at 21-24].

Defendant Commissioner, on the other hand, contends the ALJ accommodated all the restrictions supported by the record evidence, including the medical evidence and that plaintiff misunderstands the medical reports she cites to in her pleading [Doc. 17 at 15]. Moreover, defendant contends that the ALJ did not commit error in failing to question the VE at plaintiff's hearing since he reasonably relied on prior VE testimony, given the RFC found by the ALJ in the previous disability decision [Doc. 17 at 16-18; Tr. 30]. Defendant contends the ALJ throughly explained his reason for relying on the previous testimony: plaintiff's RFC had not changed since the prior decision, thus the jobs available to her then were still available to her at the time he

rendered his decision [Doc. 17 at 18; Tr. 30, 32].

With respect to plaintiff's RFC, the ALJ found that plaintiff has the following limitations:

> lifting a maximum of twenty pounds occasionally and ten pounds frequently; standing and/or walking about six hours in an eight-hour workday; sitting about six hours in an eight-hour workday; no overhead reaching with the right arm; only occasional overhead reaching with the left arm and no heavy grasping with the right hand; and limited but satisfactory ability to: deal with the public; deal with work stresses; maintain attention and concentration, understand, remember, and carry out detailed instructions; and demonstrate reliability.

(Tr. 29).

The Court finds that there is substantial evidence in the record to support the ALJ's RFC determination. In arguing that the ALJ failed to accord proper weight to the opinions of record, plaintiff cites to the opinion of Dr. Summers and four different reviewing state agency reports. In citing to Dr. Summers' treatment notes from June 6, 2002, plaintiff contends Dr. Summers opined she would have difficulty with turning/twisting her head, but Dr. Summers did not specify as to how this would limit her ability to work. In fact, Dr. Summers further opined plaintiff "should tolerate all other work related activities in this regard" (Tr. 277). Plaintiff next cites to two Psychiatric Review Techniques, one issued by Dr. Sachs, a reviewing state agency physician, on June 27, 2002 and one issued by Dr. Pestrak, also a reviewing state agency physician, on February 19, 2003. However, Dr. Sachs concluded in his "Functional Capacity Assessment" that plaintiff "can perform simple and some detailed not complex tasks over full work week [;] can interact infrequently or 1-1 with general public and meet basic social demands in a work setting [;] can adapt to graduate or infrequent changes" (Tr. 299). As for Dr. Pestrack's "Functional Capacity Assessment," he concluded that plaintiff

> can carry out simple and some detailed tasks. Attention and

11

> concentration will be adequate. Persistence and pace will be
> adequate. Claimant can work with others but would prefer to work
> alone. Claimant should not work with the public. Claimant can ask
> questions and can respond adequately to criticism. Claimant can
> respond adequately to changes in the work setting.

(Tr. 373). This Court finds these opinions as to plaintiff's ability to interact with the public as a whole and with supervisors do not contradict the ALJ's RFC finding which made allowances for plaintiff's limited ability in social settings.

Plaintiff further cites to two additional "Physical Residual Functional Capacity Assessments" prepared by reviewing state agency physicians on August 22, 2002 (Tr. 300-07) and February 13, 2003 (Tr. 349-56), respectively. Plaintiff contends these two assessments note more severe limitations than found by the ALJ. The Court disagrees with plaintiff's contention and finds the ALJ's RFC finding reflected these limitations as well. Dr. Kessler, in the August 22, 2002 assessment, noted that plaintiff's "manipulative limitations" only include a limitation of the right arm to reach overhead (Tr. 303), which the ALJ accounted for in his finding (Tr. 29). As for plaintiff's "exertional limitations" noted by Dr. Kessler, those include a limited ability to push and/or pull in the upper extremities, again a limitation noted by the ALJ in his finding. As to Dr. Gulberg's assessment dated February 13, 2003, the Court finds the same limitations were placed on plaintiff by Dr. Gulberg as by Dr. Kessler, thus the listed limitations were taken into consideration by the ALJ when making his RFC determination. Accordingly, the ALJ's RFC finding is supported by substantial evidence.

While plaintiff is correct that no evidence was presented at the second hearing, by a vocational expert or otherwise, regarding the type(s) of job(s), if any, she could perform and which existed in substantial numbers in the national economy, she is incorrect in her contention that the ALJ was in error in relying on previous VE testimony. The Commissioner has the burden of

establishing that she could perform jobs which are available in the national economy. See Varley v. Sec'y of Health & Human Serv., 820 F.2d 777, 779 (6th Cir. 1987) ("To meet this burden, there must be a finding supported by substantial evidence that plaintiff has the vocational qualifications to perform specific jobs.") (internal quotes and citations omitted). However, an ALJ may properly rely upon evidence presented at a prior hearing in making his determination. See Wolfe v. Chater, 86 F.3d 1072, 1079 (11th Cir. 1996) (finding "that the third ALJ's examination of the conflicting vocational expert testimony from the two prior hearings was appropriate"); see also Naudin v. Apfel, 119 F. Supp. 2d 812, 818 (C.D. Ill. 2000) ("[A]n ALJ may properly rely upon evidence presented at a prior hearing in making his determination."); Woolf v. Sullivan, 1992 WL 533050, *7 (E.D.Mo. Oct. 19, 1992) ( finding that substantial evidence existed for the ALJ's conclusion based upon the vocational expert's testimony at a prior hearing).

Here, vocational expert, Jane Hall, testified in response to a hypothetical posited by ALJ Erwin at plaintiff's first hearing that a substantial number of jobs existed within the national economy for an individual with plaintiff's RFC. Specifically, Ms. Hall testified "assuming the hypothetical individual's specific work restrictions. she is capable of making a vocational adjustment to other work." (Tr. 55). Ms. Hall further testified that given all these factors, "the claimant could work as inspector/checker/examiner (890 jobs regionally, 295,000 jobs nationally), cashier/ticket seller (5,000 jobs regionally, 1.6 million jobs nationally), sorter (180 jobs regionally, 87,000 jobs nationally) or assembler (1,700 jobs regionally, 739,000 jobs nationally)." (Id.). This hypothetical was part of the record from plaintiff's prior disability application and provided the basis for the agency's denial of that application. Plaintiff appealed the earlier decision to the Appeals Council, which denied review on July 22, 2003 and no issue is currently "raised as to reopening this prior, final disposition" (Tr. 25). Furthermore, plaintiff does not suggest Ms. Hall's testimony was

in error, and can point to nothing substantial which has changed in her condition to suggest reliance on the prior report is in error. In light of the fact plaintiff had an opportunity to review the prior decision and testimony, and the ALJ cited to other medical evidence to support his RFC determination, this Court finds the ALJ's reference to the previous VE testimony was not in error.

## IV.    Conclusion

Accordingly, the Court finds that the ALJ properly reviewed and weighed all of the medical source opinions to determine plaintiff is capable of performing light work with listed restrictions. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[1] that the Plaintiff's Motion For Summary Judgement [Doc. 12] be **DENIED** and that the Commissioner's Motion for Summary Judgment [Doc. 16] be **GRANTED**.

Respectfully submitted,

_____ s/ H. Bruce Guyton _____
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).